IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DUBUQUE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs,<br><br>AUSTIN MATTHEW OBERBROECKLING,<br><br>Defendant. | Case No. CR21-01026 CJW<br><br>BRIEF IN SUPPORT OF SENTENCING MEMORANDUM |

Comes Now, defendant Austin Matthew Oberbroeckling, by and through counsel, and submits this Brief in Support of Sentencing Memorandum.

## TABLE OF CONTENTS

PAGE
I.   INTRODUCTION……………………………………..2
II.  ISSUES..........................................................................4
III. ARGUMENTS................................................................4

(1) Four-level enhancement for possessing a firearm in connection with the felony offense of Carrying Weapons, in violation of Iowa Code §724.4(1), USSG § 2K2.1(b)(6)(B)……………………………………..4

(2) Whether the Defendant qualifies for a downward variance based upon several factors, including military service, service connected disability, and physical and mental health conditions including PTSD, among other factors under Title 18 U.S.C. §3553(a) ………………10

1

    a. The Defendant's Remorse, Contrition, Desire for Rehabilitation…………………………........13
    b. Defendant's Military Service……................14
    c. Defendant's Substance Abuse Problems…..15
    d. Defendant's Physical and Mental Health Conditions……………………………...……16

 IV. CONCLUSION..................................................................17

## I. INTRODUCTION

In October, 2013, U.S. Marine Corps Private First Class (PFC) Matthew Oberbroeckling was part of a squad of Marines on maneuvers in Camp Pendleton, California, while at Marine Corps Infantry School. The Afghanistan Was was raging, and all of the Marines fully expected to see action there in the near future. It was the reason they had enlisted into the Marine Corps in the first place. They took their training very seriously.

PFC Oberbroeckling had on full combat gear, which weighed approximately 50 pounds, and carried an M249 Squad Automatic Weapon (SAW), which weighed 18 pounds fully loaded. The 12 member squad was conducting recon on top of Recon Ridge, after climbing "Mount Motherf****r," ascending several hundred feet up to the ridge line, nearing the end of their 20 mile hike. Around dusk, while traversing the ridgeline, PFC Oberbroeckling slipped down a steep cliff, landing on a boulder, flipping over it, and continuing to fall to the bottom of the ridge. He suffered a fracture in his hip, spinal injuries including numerous slipped

2

discs, a pinched spinal cord, and had chronic pain. For more than a year and a half, PFC Oberbroeckling attempted to rehabilitate, working his administrative job and earning the rank of Lance Corporal; but eventually he had to be honorably discharged from the Marine Corps due to the extent of his injuries, and was given a 90% disability rating. When the prescription medications he was given for his injuries failed to take care of the pain and curtail the impact of PTSD, Mr. Oberbroeckling turned to heroin and other drugs to make him numb. This illegal controlled substance addiction is what brings us to the Court for sentencing in this matter.

As an initial matter, Mr. Oberbroeckling accepts responsibility for his involvement in the instant offense, as evidenced by his guilty plea. In making these arguments at sentencing, he in no way attempts to minimize his involvement. Instead, Austin merely wishes to be sentenced on the basis of accurate information and to provide relevant information for the Court to use in fashioning a sentence no greater than necessary to effectuate the goals of sentencing under 18 U.S.C. §3553(a)(2).

Mr. Oberbroeckling recognizes that his offense is serious and requires the appropriate attention of this Court. He acknowledges that his conduct was disgraceful. However, Austin does make some legal objections to the conclusions and penalties recommended in the PSR. He further provides

3

this brief in support of those objections and asks that the Court sentence him based upon accurate and reliable information and that his sentence be no greater than necessary to achieve the goals of sentencing under §3553(a).

II.  **ISSUES:**

    (1)    Four-level enhancement for possessing a firearm in connection with the felony offense of Carrying Weapons, in violation of Iowa Code §724.4(1), USSG § 2K2.1(b)(6)(B).

    (2)    Whether the Defendant qualifies for a downward Variance based upon several factors, including military service, Service-connected disability, and physical and mental health conditions including PTSD, among other factors under Title 18 U.S.C. §3553(a).

III.  **ARGUMENTS**

**(1)  Four-level enhancement for possessing a firearm in connection with the felony offense of Carrying Weapons, in violation of Iowa Code §724.4(1), USSG § 2K2.1(b)(6)(B).**

On August 1, 2019, the Defendant possessed and carried a firearm while at the Verizon Store in Dubuque, Iowa. PSR ¶ 4. The Defendant possessed a permit to carry. Id. The Defendant produced the permit to carry to law enforcement. Id. Mr. Oberbroeckling at the time had in his system

4

amphetamines/methamphetamines, norfentanyl, fentanyl acetyl fentanyl, 4-ANPP, morphine, codeine, hydromorphone, and normorphine. PSR ¶6. Iowa Code § 724.4(4)(i) states:

> 4. Subsections 1 through 3 do not apply to any of the following:
>
> (i) A person who has in the person's possession and who displays to a peace officer on demand a valid permit to carry weapons which has been issued to the person, and whose conduct is within the limits of that permit. A person shall not be convicted of a violation of this section if the person produces at the person's trial a permit to carry weapons which was valid at the time of the alleged offense and which would have brought the person's conduct within this exception if the permit had been produced at the time of the alleged offense.

Iowa Code § 724.4C, was amended in 2017[1]. It formerly read:

> "A permit issued under this chapter is invalid if the person to whom the permit is issued is intoxicated as provided in section 321J.2, subsection 1."

Now, § 724.4C states:

> 1. Except as provided in subsection 2, a person commits a serious misdemeanor if the person is intoxicated as provided under the

---

[1] Before the Amendment, §724.4C was entitled, "Possession or carrying while under the influence." It now reads, "Possession or carrying dangerous weapons while under the influence."

5

conditions set out in section 321J.2, subsection 1, paragraph "a", "b", or "c", and the person does any of the following:

a. Carries a dangerous weapon on or about the person.

b. Carries a dangerous weapon within the person's immediate access or reach while in a vehicle.

2. This section shall not apply to any of the following:

a. A person who carries or possesses a dangerous weapon while in the person's own dwelling, place of business, or on land owned or lawfully possessed by the person.

b. The transitory possession or use of a dangerous weapon during an act of justified self-defense or justified defense of another, provided that the possession lasts no longer than is immediately necessary to resolve the emergency.

Section 321J.2(1)(a), (b), and (c) read:

> 1 Before the amendment, § 724.4C was entitled "Possession or carrying firearms while under the influence." It now reads "Possession or carrying dangerous weapons while under the influence."
>
> 321J.2 Operating while under the influence of alcohol or a drug or while having an alcohol concentration of .08 or more (OWI).
>
> 1. A person commits the offense of operating while intoxicated if the

person operates a motor vehicle in this state in any of the following conditions:

a. While under the influence of an alcoholic beverage or other drug or a combination of such substances.

b. While having an alcohol concentration of .08 or more.

c. While any amount of a controlled substance is present in the person, as measured in the person's blood or urine.

Clearly, § 724.4C was amended to provide a different punishment for persons like the Defendant who possessed a permit to carry firearms, but were "intoxicated as provided under the conditions set out in Section 321J.2, subsection 1, paragraph 'a', 'b', or 'c'." As such, the Defendant possessed the firearm in connection with a serious misdemeanor, not an aggravated misdemeanor, and not a felony within the meaning of § 2K2.1(b)(6)(B).

It should also be noted that, in *U.S. v. Hill,* 2014 WL 4920365 (1st Cir. 2014), Judge Torruella wrote a concurring opinion to note a disturbing trend in criminal prosecutions. All too often, prosecutors charge individuals with relatively minor crimes, carrying correspondingly short sentences, but then use section 1B1.3(a) to argue for significantly enhanced terms of imprisonment under the guise of "relevant conduct" other crimes that have not been charged (or, if charged, have led to an acquittal) and have not been

7

proven beyond a reasonable doubt. In other words, [the defendant] was subject to an additional six to eight years in prison due to isolated drug sales not directly related to the twenty oxycodone pills which led to his conviction, all of which he was never arrested for, never charged with, never pled guilty to, and never convicted of by a jury beyond a reasonable doubt. This is a prime example of the tail wagging the dog." "The practice of arguing for higher sentences based on uncharged and untried 'relevant conduct' for, at best, tangentially related narcotics transactions seems like an end-run around these basic constitutional guarantees afforded to all criminal defendants. The government's role is to ensure justice, both to the accused and to the public at large; it is not to maximize conviction rates and argue for the greatest possible sentence. And, while it is unclear to me whether this trend is due to shaky police work resulting in cases that cannot be proven beyond a reasonable doubt, prosecutorial laziness, or other less nefarious factors, it remains troubling regardless."

Interestingly, the U.S. Supreme Court recently discussed judges treating cases with more deference to the Defendants. In *Wooden v. U.S.*, No. 20-5279, March 7, 2022, Justices Gorsuch and Justice Sotomayor, in concurring with the judgment, agreed that courts should be more willing to

apply the doctrine known as "the rule of lenity" in cases that are not as "clear" or easy as Wooden's.

"The 'rule of lenity' is a new name for an old idea—the notion that 'penal laws should be construed strictly,'" the concurrence notes, before delving into a history of the doctrine and its specific use in the early American judicial system viz. "upholding the Constitution's commitments to due process and the separation of powers." Over time though, Gorsuch notes, federal courts have picked away at the application of the doctrine and shied away from using lenity by creating various self-imposed hurdles.

The concurrence says that such limitations do "not derive from any well considered theory about lenity or the mainstream of this Court's opinions," and counsels that federal judges should be more willing to rule in criminal defendants' favor when facing "ambiguous cases" in order to protect constitutionally-protected liberty interests.

"Where the traditional tools of statutory interpretation yield no clear answer, the judge's next step isn't to legislative history or the law's unexpressed purposes.," Gorsuch says. "The next step is to lenity." Id. at Pg. 13.

Mr. Oberbroeckling should not be assessed the 4-level enhancement for possessing a firearm in connection with the felony offense of Carrying Weapons, in violation of Iowa Code §724.4(1), USSG § 2K2.1(b)(6)(B).

**(2) Whether the Defendant qualifies for a downward Variance based upon several factors, including military service, service-connected disability, and physical and mental health conditions including PTSD, among other factors under Title 18 U.S.C. §3553(a).**

The Defendant submits that mitigating factors exist in this case demonstrating that a within Guidelines sentence is in direct conflict with the sentencing mandate under 18 U.S.C. §3553(a), which requires this Court to impose a sentence that is "sufficient, but not greater than necessary to achieve the goals of sentencing." Mitigating factors that this Court should take into consideration under §3553(a) include: (1) the Defendant's remorse and post-offense desire for rehabilitation; (2) the Defendant's military service and service-connected disability; (3) Mr. Oberbroeckling's substance abuse problems; and (4) Defendant's physical and mental health. Based on the above, the Defendant submits that he should be sentenced below the applicable Guideline range. In light of the decisions issued in cases such as *U.S. v. Booker*, 125 S.Ct. 738 (2005) and *Kimbrough v. U.S.,*

10

128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), this Court is free to issue a sentence in compliance with 18 U.S.C. §3553 that is fair, based upon the specific facts of this case.

It is important to note that all the factors set forth in §3553(a) are subservient to §3553(a)'s mandate to impose a sentence that is sufficient but not greater than necessary to comply with the 4 purposes of sentencing. The purposes of sentencing described in §3553(a)(2) include:

    (a)    Provide just punishment for the offense;

    (b)    Afford adequate deterrence to criminal conduct;

    (c)    Protect the public from further crimes of the defendant; and

    (d)    To provide the defendant with needed medical care or other correctional treatment in the most effective manner.

*Booker* suggests that not any one of these factors is to be given greater weight than any other factor. The bottom line is that the Court should impose a sentence that is ***minimally sufficient*** to accomplish specified purposes of sentencing, and the guidelines are only one of the five equally important factors to be considered in determining the minimally sufficient sentence.

A sentence which satisfies the purposes of sentencing defined in §3553(a) is more than sufficient. For the reasons discussed below, a

sentence of 12 months and one day conforms with the sentencing guidelines and sufficiently satisfies the purposes of sentencing.

While judges were previously limited by the Federal Sentencing Guidelines ("Guidelines") to imposing a sentence within the mandated range unless there was a justified grounds for departure, the new sentencing landscape requires that the sentencing judge consider all of the factors set forth in §3553(a). While the Guidelines remain in place, they are now only one of seven sentencing factors set forth in 18 U.S.C. §3553(a). A 'guideline sentence,' although presumptively reasonable, can still be found unreasonable when all the §3553(a) factors are considered. *U.S. v. Mickelson*, 433 F.3d 1050, 1055 (8th Cir. 2006). After *Gall*, it is clear that sentencing courts should employ a three-step approach to determining the sentence in a particular case. First, apply the Guidelines to determine the advisory sentencing range; second, determine if a traditional Guideline departure applies; and third, determine if a variance is appropriate based on consideration of the §3553(a) factors. *See Gall v. U.S.*, 552 U.S. 38, 50-51 (2007); *Rita vs. U.S.,* 551 U.S. 338, 352-54 (2007). In light of the Supreme Court's decision in *Gall,* it is clear that this Court enjoys enormous discretion in determining the appropriate sentence for Mr. Oberbroeckling.

### a. The Defendant's Remorse, Contrition, Desire for Rehabilitation:

The Defendant's life has been changed forever as a result of his choices and the repercussions of those choices. As a 27-year-old facing the possibility of a lengthy term of incarceration, the Defendant finds himself at the absolute bottom and he is dedicated to separating himself entirely from the criminal conduct that led to his involvement in this case. The Defendant is remorseful and contrite and desires only a chance to one day return to society and live as a productive, drug-free, law-abiding citizen.

The Defendant has made an attempt to repay society by waiving many substantive rights, admitting his conduct, and pleading guilty to his involvement in the offense. These actions have assisted the government and the judiciary in facilitating the administration of justice. The Defendant wishes to further repay society through serving this Court's sentence and through achieving total rehabilitation so that he never again becomes involved in illegal conduct in the future.

Remorse is also a factor the Court must consider. *U.S. v. Fagan*, 162 F.3d 1280, 1284-85 (10th Cir. 1998). Under the old departure analysis, "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it

13

finds that remorse is present to an exceptional degree." Now that the Guidelines are merely advisory, these factors are relevant in determining a reasonable sentencing after Booker under §3553(a). It is clear from the character letters submitted that Mr. Oberbroeckling is making effort to learn from his mistakes.

Based on the above, it is extremely unlikely that the Defendant will commit another crime, IF he is given the right tools to deal with his substance abuse addiction. The Defendant respectfully asks that this Court take these factors into consideration under §3553(a) in determining a sentence that is no greater than necessary.

**(b)  Defendant's military service:**

Mr. Oberbroeckling received an Honorable Discharge from the U.S. Army in 2015. (Def. Exh. A under seal). PSIR ¶ 52. During his service he was severely injured while training for war in Afghanistan. PSIR ¶ 43. Despite this, he made every effort to remain a U.S. Marine and serve his Country, achieving the rank of E-3 before finally being discharged 18 months after his injury with a 90% disability. While a Marine, he earned the National Defense Service Medal, Global War on Terrorism Service Medal, 2 Certificates of Appreciation and an Expert Rifleman Badge. Def. Exh. A.

**(c) Defendant's Substance Abuse Problems:**

The Defendant respectfully requests that this Court, as a part of the sentence imposed upon him, authorize the Defendant to participate in the Bureau of Prisons' 500-hour Comprehensive Residential Drug Abuse Program (RDAP) pursuant to the Bureau of Prisons' Program Statement 5330.10. The residential drug treatment program is a nine-month intensive rehabilitation program for inmates with substance abuse problems. The Program provides for up to one year reduction in sentence - at the Bureau of Prisons' discretion for inmates who successfully complete the program.

As indicated in paragraph 6 of the Pre-sentence Investigation Report, when Mr. Oberbreockling was arrested on August 1, 2019, he had no less than 10 different drugs in his system. He stipulated in his plea agreement that he was a user of heroin on August 1, 2019. PSR ¶48. Clearly, the Defendant has a serious substance abuse problem and would benefit from substance abuse counseling and treatment.

The Defendant recognizes that his abuse of controlled substances has contributed heavily to his current situation. It is also clear that his criminal history can be directly linked to his substance abuse problems. It is the sole reason for the charge that he is facing. The Defendant recognizes that his addiction to controlled substances is the sole contributing factor to his

15

involvement in the instant offense, and believes that if he could have overcome this addiction in the past, he may not be facing the court for sentencing today. The Defendant values his future and wishes to take this opportunity to address his addictions so that he never again becomes involved in illegal conduct.

Accordingly, both the Defendant and society will benefit by the Defendant's participation and completion of intensive drug rehabilitation. It is also respectfully requested that the Court, as a part of the sentence imposed upon him, recommend that he participate in the 500-hour Residential Drug Abuse Program.

**(d)     Defendant's physical and mental health conditions, including PTSD.**

Mr. Oberbroeckling has a number of serious health issues, including Radiculopathy (pain/numbness, pinched spinal nerve), both legs; lumbar spinal stenosis; degenerative disc disease; chronic pain syndrome; herniated bulging discs; tinnitus; and arthritis of the spine. He has been receiving regular epidural shots into his back. PSR ¶43, Def. Exh. (C). His mental health issues include PTSD, severe anxiety and major depressive disorder. Def. Exh. (D). His medications for his mental health issues include paroxetine, mirtazapine and hydrioxyzine. PSR ¶ 44, Def. Exh. (C). Mr.

Oberbroeckling is 90% disabled through the Veteran's Affairs stemming from his military injury. Further, the medical record exhibits are only a small sample of all of the Defendant's medical records.

## IV. Conclusion

Based on the foregoing, it is respectfully submitted that Mr. Austin Matthew Oberbroeckling should be sentenced to a prison term of 12 months and one-day, under all of the factors that the Court must consider under Title 18 USC §3553(a).

Respectfully Submitted,

*/s/ Michael K. Lahammer*
Michael K. Lahammer
425 2nd Street SE, Suite 1010
Cedar Rapids, IA 52401
319-364-1140
Attorney for the Defendant
mike@lahammerlaw.com